IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re ROSS H. BRIGGS | § | |
| | § | |
| Petitioner. | § | |
| | § | |
| | § | Case No. _____ |
| Ross H. Briggs, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | |
| The Hon. Charles E. Rendlen, III, | § | |
| | § | |
| Respondent. | § | |
| | § | |

**Petition for Writ of Mandamus and Alternative
<u>Petition for Writ of Prohibition</u>**

DOWNEY LAW GROUP LLC
Michael P. Downey
49 North Gore Avenue, Suite 2
Saint Louis, Missouri 63119
(314) 961-6644
MDowney@DowneyLawGroup.com

COUNSEL FOR PETITIONER ROSS
H. BRIGGS

COMES NOW petitioner Ross H. Briggs and pursuant to 28 U.S.C. § 455; Bankruptcy Rule 5004; and Federal Rule of Appellate Procedure 21 petitions this Court for a Writ of Mandamus or alternatively for a Writ of Prohibition directed against the Hon. Charles E. Rendlen, III ("Judge Rendlen"), Bankruptcy Judge for the U.S. Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court"), to (a) mandate that Judge Rendlen recuse from presiding over any matters relating to the reinstatement of  Mr. Briggs' full privileges to practice in the Bankruptcy Court; or (b) alternatively prohibit Judge Rendlen from presiding over matters relating to Mr. Briggs' practice and privileges before the Bankruptcy Court and from issuing further Notices and Referrals relating to Mr. Briggs.

Mr. Briggs is entitled to the extraordinary relief requested in this Petition for Writ because, as detailed below, since April 2016 Judge Rendlen has engaged in egregious violations of his legal and ethical duties – including under 28 U.S.C. § 455 and Canons 2A and 3A(4) of the Code of Conduct for United States Judges – to avoid engaging in improper investigations and communications and to retain an appearance of impartiality. Judge Rendlen's violations include (a) *sua sponte* requesting a transcript from a deposition taken in litigation in which neither Judge Rendlen nor Mr. Briggs was involved; (b) *sua sponte* reviewing Mr. Briggs' filings in other judges' cases; and (c) *sua sponte* investigating Mr. Briggs' law firm website, after which Judge Rendlen took actions and issued threats against Mr. Briggs based

1

upon what Judge Rendlen believed his *sua sponte* investigations uncovered. Mr. Briggs requests extraordinary relief because other avenues for relief have been exhausted without providing the relief sought, review by an impartial judge of the merits of Mr. Briggs' request for reinstatement of full privileges.

In further support of Mr. Briggs' Petition for Writ of Mandamus and Alternative Petition for Writ of Prohibition (the "Petition for Writ"), Mr. Briggs states:

### A.    Background and the Eight Cases.[1]

1.    Mr. Briggs is an attorney licensed to practice law in the State of Missouri. He is admitted to practice in courts including the U.S. Bankruptcy Court for the Eastern District of Missouri and has primarily practiced before this Bankruptcy Court since 1995.

---

[1]    The "Eight Cases" are *In re Reed*, Case No. 14-44818; *In re Brady*, Case No. 14-44909; *In re Long*, Case No. 14-45773, *In re Beard*, Case No. 14-43751, *In re Moore*, Case No. 14-44434; *In re Logan*, Case No. 14-44329; *In re Stewart*, Case No. 14-43912; and *In re Shields*, Case No. 14-43914.

Judge Rendlen has accused that Mr. Briggs "consistently mischaracterizes the facts of what occurred before [Judge Rendlen]" when seeking relief through appellate or writ proceedings. *See* Judge Rendlen's Order in *Reed* dated August 15, 2016, at 3-4. Undersigned counsel attempt here to fully comply with obligations of candor, but the word limit imposed by Federal Rule of Appellate Procedure 21 requires severe truncating of the background discussion, in light of the magnitude and complexity of related litigation.

2.     In 2014, Mr. Briggs assumed representation of approximately 200 clients previously represented by attorney James Robinson after Judge Rendlen suspended Mr. Robinson's practice before the Bankruptcy Court for misconduct Judge Rendlen found with Mr. Robinson's association with a bankruptcy petition preparer founded by Beverly Diltz, Critique Services LLC.[2] Mr. Robinson's Missouri bar license was later suspended for related misconduct.

3.     Subsequently Judge Rendlen entered several orders in the Eight Cases, cases where Judge Rendlen had entered discharges for the debtors in 2014 and where Mr. Robinson had been the debtor's counsel, seeking information about the handling of attorney's fees paid to Mr. Robinson's clients. Judge Rendlen also ordered Mr. Robinson, Ms. Diltz, Critique Services, and later Mr. Briggs (successor counsel to Mr. Robinson in six of the Eight Cases), among others, to provide information regarding Mr. Robinson's fees.

4.     Ultimately Judge Rendlen entered an order (the "April 2016 Order") preventing Mr. Briggs *inter alia from* filing new bankruptcy cases in the Bankruptcy Court for at least six months and until Mr. Briggs satisfied certain other conditions.

---

[2]     At various points, both Ms. Diltz and Critique Services have undergone name changes. Those changes are not relevant here, however, so for simplicity this Petition for Writ refers to them as "Ms. Diltz" and "Critique Services."

5.     Since entry of the April 2016 Order (Exhibit A), Mr. Briggs has engaged in extensive litigation seeking to overturn the sanctions imposed in the April 2016 Order and to regain full privileges to practice before the Bankruptcy Court. Mr. Briggs also appealed entry of the April 2016 Order. This appeal ultimately reached the Eighth Circuit, who on April 25, 2018, vacated Judge Rendlen's finding Mr. Briggs had made misrepresentations to Judge Rendlen, but affirmed the imposition of sanctions. *See In re Evettte Reed*, Case No. 17-1143 (8th Cir.), Exhibit L. Mr. Briggs also sought reinstatement from the Chief Judges of the Bankruptcy Court and the District Court, as well as from Judge Rendlen himself, but in each instance Mr. Briggs has been denied the relief he has sought without hearing. *See In re Ross H. Briggs*, Case No. 17-00401 (E.D. Mo. Bankr.), denied without hearing on November 6, 2017, and appealed as Case No. 4:18-CV-00028-SNLJ (E.D. Mo.); and *In re Ross H. Briggs*, Case No. 4:17-mc-00674-RWS (E.D. Mo.), denied without hearing; *In re Reed*, Case No. 14-44818 (E.D. Mo. Bankr.) (denied on August 15, 2016, and July 10, 2018, both without hearing).

6.     Meanwhile, since April 2016, Mr. Briggs has appeared – with Judge Rendlen's knowledge – hundreds of times before other judges in the Bankruptcy Court, without being disciplined, sanctioned, or the like.

**C.** **Judge Rendlen's egregious violations of legal and ethical obligations – issuance of "Notices" and "Referrals" against Mr. Briggs primarily based upon Extra-Judicial Information.**

7.     While Mr. Briggs was seeking appellate relief of Judge Rendlen's April 2016 Order, Judge Rendlen continued to investigate and take action against Mr. Briggs, despite the absence of any active proceedings in front of Judge Rendlen relating to Mr. Briggs. Specifically, since October 18, 2016, Judge Rendlen issued the following "Notices," "Orders," and "Referrals" (collectively "Notices and Referrals"):

(a)     ***A Notice dated October 18, 2016, Regarding the Suspension of Attorney Ross H. Briggs*** (Exhibit B), informing Mr. Briggs that Judge Rendlen believed Mr. Briggs could seek reinstatement of full privileges from Judge Rendlen, but that Judge Rendlen [had] a "few inquiries of Briggs regarding his knowledge (or lack of knowledge) of the handling of the Debtors' fees and fee-handling at the Critique Services Business – the issues raised in these Cases which have never been addressed, due to the contempt of the Contemnors." Judge Rendlen indicated Mr. Briggs would be expected to answer the questions, and directed that this Notice should be forwarded to the District Court and the Missouri Office of Chief Disciplinary Counsel.

5

(b)     ***A Notice dated February 3, 2017, to Attorney Ross Briggs***
(Exhibit C), indicating Judge Rendlen had obtained a deposition
transcript of Beverly Diltz (the "Diltz Transcript") taken in a
federal case and a state-court case,[3] neither of which were
pending before Judge Rendlen, and that Mr. Briggs would be
required to address certain issues about which Ms. Diltz had
testified if and when Mr. Briggs sought reinstatement.

(c)     ***A Referral dated February 14, 2017, of Attorney Ross H. Briggs
and His Conduct to the Missouri Supreme Court's Office of
Chief Disciplinary Counsel*** (Exhibit D), addressing a motion for
protective order that Mr. Briggs had filed in the same cases where
Ms. Diltz had been deposed, *Casamatta* and the State Court
Litigation (Exhibit G). Mr. Briggs had sought a protective order
– raising Canons 2A and 3A – to prevent Judge Rendlen from
obtaining and using against Mr. Briggs a transcript Mr. Briggs
anticipated would result from his depositions. In the Referral,

---

[3]     The federal case was *Casamatta v. Critique Services, LLC* (Cause No. 16-40250-629), an adversary proceeding pending in the Chapter 13 bankruptcy case *In re Damon Dorris*, Case No. 40250-85 (E.D. Mo. Bank.) ("*Casamatta*"). *Casamatta* was pending before the Hon. Kathy Surratt-States, Chief Judge of the Bankruptcy Court. The state-court case was *State ex rel. Koster v. Critique Services, LLC*, Cause No. 1622-CC00503 (Cir. Ct. City of St. Louis) (the "State Court Litigation").

Judge Rendlen claimed the motion for protective order contained "false and unethical statements" and directed that this Referral be sent, *inter alia*, to Missouri Office of Chief Disciplinary Counsel.

(d)  ***A Notice dated May 23, 2017, to Suspended Attorney Ross H. Briggs that, Should He Seek Reinstatement from His Suspension, He Will Be Expected to Address the Representations Made on His Law Firm's Website, and Supplemental Referral to the Missouri Supreme Court's Office of Chief Disciplinary Counsel, and Directive to the Clerk of Court to Provide a Copy of This Notice to the Office of the Missouri Attorney General, Consumer Protection Division, and Directive to the Clerk of Court to Provide a Copy of This Notice and Related Orders to the Attorney Disciplinary Authorities of the States of Illinois and Florida*** (Exhibit E), which, as the lengthy title states, discussed the contents of Mr. Briggs' law firm website *sua sponte* and again without Mr. Briggs having a chance to respond referred Mr. Briggs to disciplinary counsel in in Missouri, Florida, and Illinois related to allegations of false statements on the website.

While these Notices and Referrals serve as Mr. Briggs' primary evidence that Judge Rendlen has lost his appearance of impartiality, they are not unique to Judge Rendlen's actions. On June 29, 2016, for example, Judge Rendlen issued an Order (Exhibit H) calling Mr. Briggs "repeat bad-actor attorney," discussing Judge Rendlen's *sua sponte* reviewed Mr. Briggs' electronic filings in another case, and re-imposing sanctions on Mr. Briggs based upon that filing. Judge Rendlen also issued a Notice on November 17, 2017 (Exhibit F), claiming that Mr. Briggs "continued making false and misleading statements," discussing the pleadings seeking reinstatement of privileges that Mr. Briggs had filed in front of Bankruptcy Court Chief Judge Surratt-States and District Court Chief Judge Sippel, and inviting Briggs to seek reinstatement of privileges from Judge Rendlen himself.

> **D.    Mr. Briggs requests that this Court and the Eighth Circuit disqualify Judge Rendlen on remand from presiding over matters relating to Mr. Briggs.**

8.    Concerned about Judge Rendlen's conduct and statements in the Notices and Referrals, Mr. Briggs requested that the Eighth Circuit and District Court disqualify Judge Rendlen from presiding over future proceedings relating to reinstatement of Mr. Briggs' full privileges to practice before the Bankruptcy Court for apparent violations of 28 U.S.C. § 455; Canons 2A and 3A; and Federal Rule of Evidence 201. On March 29, 2017, Mr. Briggs filed motions to disqualify on remand in the Eight Circuit. (Exhibit I) On May 26, 2017, Mr. Briggs filed an almost

identical motion to disqualify Judge Rendlen on remand in the District Court. (Exhibit J)

9.      Both the District Court and the Eighth Circuit declined to grant Mr. Briggs' motions to disqualify Judge Rendlen on remand. In April 2018, the Eighth Circuit stated that, because it was not remanding the case to Judge Rendlen, the motion to disqualify was moot. Eighth Circuit Opinion at 16 n.5.  In September 2017, meanwhile, the District Court denied Mr. Briggs' Motion to Disqualify Judge Rendlen, after concluding Mr. Briggs' failure to appeal a June 2016 sanction order – relating to Mr. Briggs' improper use of his passcode to electronically file a pleading bearing another attorney's typed name – in seven of the Eight Cases rendered both the appeal of the June 2016 order and the Motion to Disqualify on Remand moot.

**E.      Mr. Briggs unsuccessfully seeks reinstatement of full privileges from the District Court and the Bankruptcy Court.**

10.      As noted earlier, Mr. Briggs previously sought reinstatement of his full privileges from the Chief Judges of the Bankruptcy Court and the District Court, but those efforts were denied on November 26, 2017, in *In re Ross H. Briggs*, Case No. 17-00401 (E.D. Mo. Bank.), and December 15, 2017, in *In re Ross H. Briggs*, Case No. 4:17-mc-00674-RWS (E.D. Mo.). Both denials were entered without Mr. Briggs receiving a right to be heard on the bases for dismissal.

11.     Finally, on or about June 4, 2018,[4] Mr. Briggs filed petitions for reinstatement of full privileges and motions to disqualify before Judge Rendlen in the Eight Cases.

12.     On June 25, 2018, Judge Rendlen denied the pending motions to disqualify. Judge Rendlen based his denial *inter alia* on Mr. Briggs having known about the bases for disqualification for some time.

13.     On or about July 10, 2018, Judge Rendlen denied Mr. Briggs' petitions for reinstatement of full privileges in the Eight Cases without prejudice.

14.     On July 24, 2018, Mr. Briggs appealed Judge Rendlen's denials of the motion to disqualify and of the petitions for reinstatement of full privileges in *Reed.* Judge Rendlen then struck this notice of appeal *sua sponte* on July 25, 2018, for failure to comply with Bankruptcy Court Local Rule 8001. The District Court then on August 8, 2018, likewise struck the Notice of Appeal *sua sponte* for failure to comply with Bankruptcy Court Local Rule 8001 in *Reed*, Case No. 4:18-cv-01228.

---

[4]     An identical petition for reinstatement of full privileges was filed in four of the Eight Cases on June 4, 2018, and in four of the Eight Cases on 5, 2018. Motions to disqualify were also filed in six of the Eight Cases on those dates. Due to an error when filing these pleadings, no motion to disqualify was filed in *Shields* or Stewart in early June 2018. Mr. Briggs corrected this error by filing virtually identical motions to disqualify Judge Rendlen in *Shields* and *Stewart* on July 10, 2018. Mr. Briggs believes the precise dates when these pleadings were filed should have no effect on this Petition for Writ.

Mr. Briggs has a motion to reconsider the striking of his *Reed* notice of appeal pending before the District Court.

15.    Simultaneous to his appeal in *Reed*, Mr. Briggs filed a motion to reconsider in the Eight Cases other than *Reed.*

16.    The next day, on July 25, 2018, Judge Rendlen denied the motions to reconsider. Mr. Briggs then appealed the denial of his motion to reconsider in the Eight Cases other than *Reed* on July 31, 2018. These seven appeals remain pending before this Court.

17.    As set forth below, however, it appears that the proper vehicle for this Court to exercise supervisory jurisdiction over Judge Rendlen and to review his denial of Mr. Briggs' motions to disqualify is through a petition for writ, resulting in this filing.

## Jurisdiction for Writ

A writ of mandamus is statutorily authorized under the All Writs Act, 28 U.S.C. 1651(a). A petition for writ of mandamus may be brought to the District Court to address matters in the bankruptcy court. 19 James Wm. Moore, et. al., *Moore's Federal Practice* § 204.05[1](3d ed. 2002). This includes seeking disqualification of a bankruptcy court judge where that judge has failed to recuse. *See In re Huntington Commons Association*, 21 F.3d 157 (7th Cir. 1994) (reviewing but denying on the merits petition for writ of mandamus to disqualify bankruptcy

judge); *Frates v. Wienshienk*, 882 F.2d 1052 (10th Cir. 1989) (same); *In re Allison*, Case No. 88-3761, 1992 U.S. App. LEXIS 20303 (9th Cir. August 14, 1992); *In re Bennett*, 382 B.R. 308 (10th Cir. BAP 2002) (same). In fact, some courts have determined that "[m]andamus is not only the preferred remedy to review the denial of a motion to recuse under 28 U.S.C. § 455(a), it is the only remedy." *In re Huntington Commons Association*, 1993 U.S. Dist. LEXIS 8679, at *4 (N.D. Ill. June 25, 1993) (reviewing possible disqualification of a bankruptcy judge).

"Extraordinary writs like mandamus are useful safety valves for promptly correcting serious errors." *In re Kemp*, 894 F.3d 900, 2018 U.S. App. LEXIS 18096, at * 7 (8th Cir. 2018) (internal quotations omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of the extraordinary remedy of mandamus." *Id.* (internal quotations omitted). To grant a writ of mandamus, a reviewing court should weigh three factors:

(1)   the petitioning party must satisfy the court that he has no other adequate means to attain the relief he desires

(2)   his entitlement to the writ is clear and indisputable; and

(3)   the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Id.* (quoting, *inter alia*, *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 380-81 (2004) (internal quotations omitted)). A writ of prohibition is granted under similar circumstances. *In re Union Elec. Co.*, 787 F.3d 903, 908 (8th Cir. 2015).

This Court also has jurisdiction to consider this petition pursuant under its inherent supervisory power as an appellate court to ensure that underlying bankruptcy proceedings are conducted by unbiased judicial officers. *See United States v. Tucker*, 78 F.3d 1313, 1323-24 (8th Cir. 1996); *Reserve Mining Co. v. Lord*, 529 F.2d 181, 188 (8th Cir. 1976).

## **Entitlement to Relief Sought – Disqualification of Judge Rendlen**

### A.      **Standard for Disqualification.**

The Due Process Clause of the United States Constitution "entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The requirement for an impartial, disinterested tribunal "preserves both the appearance and reality of fairness, generating the feeling, so important to a popular government, that justice has been done, by ensuring that no person will be deprived

of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Id.* (internal citations and quotations omitted).

The primary federal statute governing judicial disqualification for partiality or interest is 28 U.S.C. § 455(a), which requires that any federal judge must recuse[5] or be disqualified "in any proceeding in which his impartiality might reasonably be questioned." In addition, a judge must recuse or be disqualified in any matter in which the judge "has a personal bias or prejudice concerning a party," and where "in governmental employment" the judge "participated as counsel . . . concerning the proceeding." 28 U.S.C. § 455(b)(1) & (3); *see also* Federal Rule of Bankruptcy Procedure 5004(a)(stating a "bankruptcy judge shall be governed by 28 U.S.C. §455").

Disqualification under § 455 is required "when an average person knowing all the relevant facts of a case might reasonably question a judge's impartiality." *Dossett v. First State Bank*, 399 F.3d 940, 953 (8th Cir. 2005). When as here the judge will serve as the trier of fact, "the need to preserve the appearance of impartiality is

---

[5]    The requirement for a judge to recuse under § 455 requires action on the judge's own initiative, even absent a party's motion. "[I]t is the fundamental ethical duty of every judge to police his or her own disqualification status." *Southwestern Bell Telephone Co. v. FCC*, 153 F.3d 520, 521 (8th Cir. 1998).

especially pronounced." *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993).

    **B.**    **Judge Rendlen has considered information obtained without proper notice to Mr. Briggs or his counsel, violations of Canon 3A(4) and Federal Rule of Evidence 201.**

Judge Rendlen must be disqualified from considering Mr. Briggs' request for reinstatement of full privileges because Judge Rendlen has received, considered, and taken actions based upon information relating to Mr. Briggs' reinstatement without affording Mr. Briggs proper notice and a hearing, conduct that clearly and indisputably violates Judicial Canon 3A(4) and Federal Rule of Evidence 201.

***Disqualification of a judge for communications about a pending matter without proper notice.*** Canon 3A(4) restricts when a federal judge – including a bankruptcy judge – may engage in *ex parte* communications. Canon 3A(4) in part states:

> Except as set out below, ***a judge should not*** initiate, permit, or consider ex parte communications or ***consider other communications concerning a pending or impending matter that are made outside the presence of the parties*** or their lawyers.

(Emphasis added) The language "[e]xcept as set out below" refers to certain exceptions listed in Canon 3A(4) but not relevant here.

Where a judge has been found to have violated Canon 3A(4), such violations create an appearance of partiality, resulting in disqualification under § 455. *United*

*States v. Microsoft Corp.*, 253 F.3d 34, 113-14, 116 (D.C. Cir. 2001). A leading treatise on judicial disqualification, *Judicial Disqualification* by  Richard E. Flamm, explains: "[I]t is generally agreed that whenever a judge initiates or entertains ex parte communications, a question may reasonably be raised about his ability to be impartial in disposing of questions germane to the subject of such communications." *Id.* at §14.1, 374-75 (2nd Ed. 2010)). Where a judge who has acted in contravention of the ex parte communication rule fails to accede to a request to recuse, therefore, "such failure may provide a legally sufficient ground for judicial disqualification, reassignment to another judge, reversal of any decision by that judge, and/or vacatur of the judge's orders." *Id*. at 375-76.

**Disqualification of a judge for improperly taking judicial notice of adjudicative facts.** In addition to Canon 3A(4) disqualification for improper consideration of extrajudicial information, Federal Rule of Evidence ("FRE") 201 limits when a judge may consider evidence not proffered through the adjudicative process that allows an adverse party to object, explain, or disprove the evidence. FRE 201 allows a court to take judicial notice of "adjudicative facts" – facts "to which the law is applied in the process of adjudication," ABA Formal Opinion 478 (2017) – only when the adjudicative fact is "not subject to reasonable dispute" due to it being "generally known within the trial court's territorial jurisdiction" or "accurately and readily determined from sources whose accuracy cannot reasonably

be questioned." FRE 201(a) and (b). FRE 201(c) also provides that a party should receive notice and be heard regarding whether a court should take notice of adjudicative facts.

When a judge takes improper judicial notice of adjudicative facts, this provides an basis for disqualification. In *Costello v. Flatman LLC*, Case No. 13-1446, 558 Fed. Appx. 59  (2d Cir. 2014), the Second Circuit found the trial judge had improperly investigated and taken notice of information not properly before it, and that this conduct required disqualifying the original trial judge and remanding the case to a new judge for reconsideration. The original trial judge had denied a prevailing plaintiff's request for attorney fees in an Americans with Disabilities Act case after – *sua sponte* and without proper notice to the parties – the judge had visited businesses plaintiff's counsel had sued for violating and found the deficiencies unremedied. The Second Circuit noted the facts considered were subject to reasonable debate, and the parties did not have any prior notice of the trial judge's intent to investigate. Thus, judicial notice of unremedied violations was improper.

***Improper judicial notice of facts by Judge Rendlen without proper notice to Mr. Briggs.*** Despite the mandate of Canon 3A(4) and the limitations imposed by FRE 201, Judge Rendlen has in at least four instances without notice to Mr. Briggs initiated an investigation and considered information outside the ordinary judicial

process and the presence of Mr. Briggs and his counsel, violations of Judicial Canon 3A(4) and FRE 201. The four instances are:

1.     <u>Obtaining and reviewing the Diltz Transcript.</u> In or about early February 2017, Judge Rendlen obtained, reviewed, and issued a Notice based upon a deposition transcript from two cases where Mr. Briggs was not a party or represented, and which were not pending in front of Judge Rendlen. The Notice dated February 3, 2017, states in part:

> The Court hereby gives **NOTICE** to suspended attorney Ross H. Briggs: should he choose to file a motion for reinstatement to the privilege of practicing law before the Court, he may be required to address the issue of whether he had any financial or professional involvement with, or connection to, Beverly Holmes Diltz, any business owned by Diltz, or suspended attorney James C. Robinson, since Briggs's suspension made effective pursuant to the order entered in these Cases on April 20, 2016

(Exhibit C at 2) Judge Rendlen also attached the entire 160-page transcript from Ms. Diltz's deposition on January 17, 2017, to his Notice dated February 3, 2017.

Judge Rendlen later confirmed that his "Chamber Staff" – presumably Judge Rendlen's law clerk Abigail Willie – had requested and received a copy of the transcript from Ms. Diltz's deposition (the "Diltz transcript") by the Missouri Attorney General. *See* Referral dated February 14, 2017, Exhibit D, at 3.

That a judge would *sua sponte* seek out, obtain and review a deposition transcript from a matter not pending before a judge, and then take action against a

person not present or represented at that deposition, should stagger the sensibilities of any impartial, disinterested judge. Why would the judge want the transcript? Under what authority would the judge request and review the transcript? And why would the judge think it fair to use the transcript against someone who was not even present at the deposition, and thus could not object or cross-examine the witness?

In his referral dated February 14, 2017, Judge Rendlen offers some defense of his actions, but more an attack on Mr. Briggs, without addressing these most fundamental issues. Judge Rendlen claims he still had the *Reed* and other bankruptcy case before him, that the Missouri Attorney General was not a party to those cases, and that Judge Rendlen was not deciding anything based upon what he had read in the Diltz transcript but only warning Mr. Briggs what issues Mr. Briggs should expect to address when seeking reinstatement. Yet all Judge Rendlen's explanations ignore that Judge Rendlen has acted interested and inquisitorial about a motion he anticipated (Mr. Briggs' request for reinstatement of full privileges), not as a disinterested and impartial jurist as required for our judicial system. *See Marshall v. Jerrico, Inc.*, 446 U.S. at 242. Everything Ms. Diltz said in her deposition is disputable. Under FRE 201(b), a court may take judicial notice only of undisputable facts. *See also Hawkins v. Nestle, Inc.*, 2018 U.S. Dist. LEXIS 19933 (E.D. Mo. Feb. 7, 2018). So accepting testimony outside ordinary procedures was wholly improper.

Judge Rendlen should have no legitimate interest in discovery documents like deposition transcripts from cases not pending before him, when those documents have not been presented to Judge Rendlen by a party filing a motion or seeking some other relief. *Stern v. Cosby*, 529 F. Supp. 2d 417, 421 (S.D.N.Y. 2007). Judge Rendlen nevertheless sought out, reviewed, and warned Mr. Briggs that he should anticipate responding to Ms. Diltz's testimony in an unfiled transcript from litigation to which Mr. Briggs was a total stranger. This a radical departure from the requirements of Canon 3A(4) requires Judge Rendlen's disqualification under § 455.

  2. <u>Obtaining Mr. Briggs' motion for protective order and referring Mr. Briggs to Office of Chief Disciplinary Counsel based upon that motion.</u> After Judge Rendlen issued his Notice of February 3, 2017, signaling he had obtained and reviewed the Diltz transcript, Mr. Briggs filed a motion for protective order in the same two cases – the *Casamatta* case pending before Chief Judge Surratt-States and the *State ex rel. Koster v. Critique Services* case pending in state court –  seeking to limit the distribution of the transcript from his own deposition.

  Again, Judge Rendlen was not presiding over either of the two case where Mr. Briggs' motion for protective order was filed; in fact, one was a state-court matter. But Judge Rendlen nevertheless obtained a copy of Mr. Briggs' motion for protective order and on February 17, 2017, issued a Referral that attacked Mr. Briggs. In the Referral dated February 14, 2017,  Judge Rendlen identified six

purportedly "false and unethical statements" he believes Mr. Briggs made in the motions for protective order, again without giving Mr. Briggs a chance to respond.[6]

Judge Rendlen's obtaining Mr. Briggs' motion for protective order from other courts and reacting to it supports Judge Rendlen is not disinterested or impartial. Rather, again, Judge Rendlen has again sought out what Mr. Briggs has filed in other courts and has reacted angrily to those filings. Further, Judge Rendlen did not merely tell Mr. Briggs what topics to expect during a hearing on reinstatement of full privileges. Rather, Judge Rendlen directed the Bankruptcy Court clerk to send copies of the Referral to the Missouri Office of Chief Disciplinary Counsel and to the courts that were then considering Mr. Briggs' requests for reinstatement of full privileges. Such conduct is not consistent with the constitutionally required disinterested, impartial judge. Rather, Judge Rendlen should be disqualified for his conduct related to obtaining and reacting angrily and adversely to Mr. Briggs' motions for protective order.

     3.    <u>Penalizing Mr. Briggs for incorrect filing in *In re Young*.</u>

Moreover, as early as June 2016 – only a few months after the April 2016 Order was entered – Judge Rendlen had already sought out and reacted to matters arising in

---

[6]    Mr. Briggs believes all the statements in his motion for protective order – which was prepared and signed by Mr. Briggs' counsel – were ethical and appropriate. Further, Mr. Briggs did not face a motion for sanctions in either *Casamatta* or the State Court Litigation.

other judges' cases that, in Judge Rendlen's view, related to the limitations on Mr. Briggs' privileges to practice before the Bankruptcy Court.

Specifically, on June 29, 2016, Judge Rendlen *sua sponte* issued an order imposing limitations on Mr. Briggs after somehow learning that on June 28, 2016, Mr. Briggs had used his own CM-ECF passcode to file a pleading that bore the signature of another attorney (Greg Luber) in *In re Melody Young*, Case No. 16-44624 (E.D. Mo. Bank.), a case assigned to Chief Bankruptcy Judge Surratt-States. (*See* Exhibit H) Chief Judge Surratt-States herself saw no basis to penalize Mr. Briggs' for his e-filing mistake. (*See* Transcript, *In re Melody Young*, Case No. 16-44624, Exhibit K, at 3-4) Nevertheless, without hearing from Mr. Briggs, Judge Rendlen *did* issue an Order *sua sponte* and without a notice or hearing, that re-imposed the limitations on Mr. Briggs' electronic filing originally imposed in the April 2016 Order. Judge Rendlen explained such sanctions were appropriate because, "[a]t a minimum, Briggs violated the terms of use of the Court's CM-ECF system by filing documents for another attorney. In addition, the documents Briggs filed contain highly suspect representations regarding the other attorney's business address and email address." Order of June 29, 2016, Exhibit H, at 4.

Thus, without giving Mr. Briggs notice or a chance to respond, Judge Rendlen concluded that Mr. Briggs "at minimum" had violated the CM-ECF terms of use, and also made "highly suspect representations." Judge Rendlen further directed the

clerk to forward a copy of the June 2016 Order to the Missouri Office of Chief Disciplinary Counsel, and that Mr. Briggs should expect to appear before the Bankruptcy Court should he seek reinstatement of his full privileges. *Id.* at 4. Again, this action by Judge Rendlen – fully independent of any action by the Trustee or any party – was outside conduct allowed by Canon 3A(4) and FRE 201. Such independent actions adverse to Mr. Briggs should result in Judge Rendlen being disqualified from future matters involving Mr. Briggs' privileges to practice before the Bankruptcy Court.

        4.    <u>Accessing Mr. Briggs' website.</u> Judge Rendlen's improper investigation of Mr. Briggs has not been limited to court filings. Rather, Judge Rendlen also *sua sponte* apparently reviewed the website for Mr. Briggs' law firm and, based upon his independent review of that website, on May 23, 2017, issued a Referral referring Mr. Briggs to disciplinary counsel in three states based upon that review. (*See* Exhibit E)

      Even though Mr. Briggs was involved in the authorship of his firm website, taking notice of Mr. Briggs' firm website *sua sponte* and without notice was improper under FRE 201 and related ethics rules. *American Prairie Construction*, 560 F.3d at 797-98 (holding it was an abuse of discretion for the district court to take judicial notice of the contents of a book written by a party as evidence); ABA Formal Opinion 478 (2017) (warning that a judge's *sua sponte* investigation of adjudicative

facts on the Internet is generally improper, as both an ex parte communication and as an improper investigation of adjudicative facts not properly subject to judicial notice).

Judge Rendlen's May 2017 Referral contains incomplete statements quite harmful to Mr. Briggs which exhibit Judge Rendlen's review of the website. For example, Judge Rendlen states that Mr. Briggs was "prohibited from practicing bankruptcy law and filing cases in this District" omitting that Judge Rendlen's own April 2016 Order did not actually "prohibit" Mr. Briggs from practicing before the Bankruptcy Court, but instead only prevented Mr. Briggs from filing new cases. Mr. Briggs was allowed to continue representing clients on existing cases, as Mr. Briggs has done continuously since April 2016. Also, Judge Rendlen lists twelve purported misrepresentations on the firm website, and repeatedly complains that Mr. Briggs is misrepresenting that he can still file cases in the Bankruptcy Court, without ever mentioning that Mr. Briggs has not filed a single new case in the Bankruptcy Court in violation of the April 2016 Order.

More egregious, Judge Rendlen directed the Bankruptcy Court Clerk to send copies of the May 2017 Referral to disciplinary counsel in Missouri, Florida, and Illinois. Thus, without giving Mr. Briggs a chance to respond to allegations of unethical conduct, Judge Rendlen asked disciplinary counsel in three jurisdictions to investigate Mr. Briggs, ultimately causing Mr. Briggs to close his fledgling

Florida office rather than face continued interference by Judge Rendlen and referrals in another state. Such violation of Canon 3A(4) and FRE 201 should again disqualify Judge Rendlen from presiding over further matters relating to Mr. Briggs' reinstatement.

### C. Judge Rendlen's impartiality is reasonably subject to question.

As discussed earlier, under  § 455(a), a bankruptcy judge shall disqualify himself from "any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *In re Goodwin*, 194 B.R. at 221 (stating bankruptcy judges are subject to recusal under § 455). Also, a federal judge shall be disqualified from any proceeding where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." § 455(b)(1).

The hostility that Judge Rendlen has repeatedly demonstrated toward Mr. Briggs proves that Judge Rendlen can no longer exercise fair and impartial judgment regarding Mr. Briggs. Apparently Judge Rendlen believes it is now his job to watch everything Mr. Briggs is doing and to punish Mr. Briggs when Mr. Briggs steps out of line. As previously discussed, on several occasions Judge Rendlen gathered information or documents (including pleadings from *Young* and *Casamatta*, cases not even assigned to Judge Rendlen) and then *sua sponte* took action against Mr. Briggs. *See also* Order of June 2016, Exhibit H, at 4 (warning Mr. Briggs, "*If you*

*are caught violating the terms of the April 20 Order, you may be subject to additional sanctions and discipline.*") (Emphasis in original).

Further, Judge Rendlen has made statements indicating that Mr. Briggs is a liar and plays games with the Court. In general, these statements are made with no factual support, or with references to the findings that Judge Rendlen included in his April 2016 Order. Yet those very findings in Judge Rendlen's April 2016 Order were held to be erroneous by the Eighth Circuit in its Opinion dated April 25, 2018. *In re Reed*, Case No. 17-1143 (April 25, 2018), Slip Opinion at 13, Exhibit L (concluding that Judge Rendlen <u>wrongly</u> sanctioned Briggs for "deliberately misle[ading] the Court" in his April 2016 Order "because [Judge Rendlen] based that conclusion on disputed questions of fact without holding an evidentiary hearing"), *petition for rehearing or rehearing en banc denied* (June 1, 2018).

Specific instances where Judge Rendlen has shown hostility that Mr. Briggs considers particularly notable include:

(a)     Attacking Mr. Briggs for purportedly employing a "Sergeant Schultz performance of ignorance" ("I know nothing!") and criticizing Mr. Briggs' answer as "uncomical, unconvincing, and highly suspicious" when Mr. Briggs was asked who were the then-current employees of Critique Services, LLC, *see* Notice Regarding Intent to Impose Sanctions dated July 22, 2015, Exhibit M at 3;

(b)     Directing Mr. Briggs to provide "complete and candid cooperation" to the Missouri Attorney General and U.S. Attorney investigations of Critique Services, and warning Mr. Briggs that invoking his Fifth Amendment protection would render the cooperation incomplete, Order dated April 28, 2016, Exhibit N, at ¶ 21;

(c)     Calling out Mr. Briggs for a purportedly "predictable tactic" of going to other courts and maligning Judge Rendlen when Mr. Briggs sought protective orders from the judges actually presiding over the cases where Mr. Briggs' deposition was being scheduled – the *Casamatta* case and State Court Litigation – to limit dissemination of the transcript, Referral of February 14, 2017, Exhibit D, at 3-4.

These strongly-worded, repeated statements indicate Judge Rendlen believes Mr. Briggs is dishonest and unethical provide compelling evidence that Judge Rendlen lacks an "appearance" of impartiality.

Moreover, in the Referral dated February 14, 2017, Judge Rendlen enunciates an apparent defense of his actions that shows Judge Rendlen fails to appreciate the need to be an impartial, disinterested judge 28 U.S.C. § 455 requires, at least with regard to Mr. Briggs. Judge Rendlen writes:

> [T]here is no requirement that the Court be ignorant of the possibility that an order it issued is being violated. If the Court learns of circumstances that suggest an order it issued has been or is being violated, the Court may give notice that *it intends to*

> _take evidence_ on the issue of whether its order was, in fact, violated—which is exactly what the Court did by issuing its Notice. _The Court is entitled to enforce its own orders and to hold accountable persons who violate its orders._ Briggs may not like the fact that the MOAG gave the Court a copy of the deposition; he may resent being told that he will have to address the issue of whether he had any prohibited financial dealings with Diltz; if he, in fact, violated the April 20 Order, he may fear accountability for such violation. But those feelings do not make the distribution of the Diltz Deposition improper.

Referral dated February 14, 2017, Exhibit D, at 7 (all emphasis in the original). In enunciating this position, Judge Rendlen suggests that it is proper for a federal judge to seek out information including from other courts or sources such as Mr. Briggs' website and – without giving the relevant lawyer an opportunity to be heard – to take action against that lawyer, such as reporting Mr. Briggs to disciplinary counsel in multiple states. Such a position is inconsistent with general principles of judicial conduct. _See_ Flamm, _Judicial Disqualification_, at § 14.9, 404 ("Because the adjudicative responsibilities of a judge are incompatible with the role of an independent investigator, and because extra-judicial fact-finding by a judge cannot be tested by the tools of the adversary process, it is ordinarily impermissible for a judge to deliberately set about to garner facts outside the record, on an ex parte basis."); _accord Price Brothers Co. v. Philadelphia Gear Corp._, 629 F.2d 444, 447 (6th Cir. 1980) (citing Canon 3A(4) and stating, "Unquestionably, it would be impermissible for a trial judge to deliberately set about gathering facts outside the record of a bench trial over which he was to preside.").

28

Judge Rendlen's enunciation of what he believes is permitted as well as his actions consistent with his incorrect belief strongly suggest that Judge Rendlen has a bias against and has prejudged Mr. Briggs' Motion for Reinstatement of Full Privileges. If Mr. Briggs has actually engaged in the type of egregious misconduct Judge Rendlen suggests, surely any fair-minded judge would deny Mr. Briggs' request for reinstatement. But the judge making such a determination should not be Judge Rendlen. Judge Rendlen's own actions and writings suggest he is too partial to proceed further on this matter under § 455(a). Due process, the Judicial Canons, and § 455 entitle Mr. Briggs to an impartial, disinterested judge. Judge Rendlen must therefore recuse or be disqualified from handling future matters involving Mr. Briggs.

### D.    Possible involvement with investigations of Mr. Briggs while Trustee.

Finally, § 455(b)(3), requires a judge must recuse or be disqualified when "in governmental employment" the judge previously "participated as counsel . . . concerning the proceeding." Prior to his appointment as a Bankruptcy Judge, on information and belief from approximately May or June 2003 to May 2006, Judge Rendlen served as the United States Bankruptcy Trustee for Region XIII, which includes the Eastern District of Missouri. *See* Rendlen Missouri Bar CLE Bio and Charles E. "Sketch" Rendlen Appointed U.S. Trustee for Missouri, Nebraska,

Arkansas, U.S. Department of Justice Press Release Dated May 29, 2003, Exhibit O.

During Judge Rendlen's service as Bankruptcy Trustee for Region XIII – the period from approximately May or June 2003 to May 2006 – that Trustee's Office conducted investigations possibly relating to Mr. Briggs. Specifically, in January 2003, prior to the time that Judge Rendlen became the Region XIII Bankruptcy Trustee, the prior Trustee Joel Pelofsky oversaw the filing of a case against Mr. Briggs and certain other parties. This litigation related to Chapter 7 bankruptcy cases Mr. Briggs had filed in the Bankruptcy Court.

In April 2003, approximately one month before Mr. Rendlen became U.S. Bankruptcy Trustee for Region XIII, Mr. Briggs settled the U.S. Trustee's claims brought against him in the matter ultimately captioned *Rendlen v. Briggs*, Case No. 03-04003 (E.D. Mo. Bank.). The settlement of *Rendlen v. Briggs* as against Mr. Briggs resulted in the filing of a proposed agreed order on April 30, 2003, approximately 30 to 60 days before Rendlen became the U.S. Trustee supervising the Office prosecuting the *Rendlen v. Briggs* case. The Agreed Order was then endorsed by the Bankruptcy Court on June 26, 2003. (*See also* PACER Docket for *Rendlen v. Briggs*, Case No. 03-04003 (E.D. Mo. Bank.), Exhibit P)[7]

---

[7]     Mr. Briggs' investigation into developments in *Rendlen v. Briggs* are limited by the fact all the referenced pleadings are "locked" on PACER.

Mr. Briggs was also involved in other litigation with representatives of the Office of the Region XIII Trustee while Judge Rendlen was Trustee supervising that Office. This includes the litigation that resulted in this Court's opinion in *Briggs v. Labarge (In re Phillips)*, 433 F.3d 1068 (8th Cir. 2006).

Mr. Briggs is not seeking disqualification of Judge Rendlen because Judge Rendlen was a "nominal party." Rather, Mr. Briggs is seeking a clear statement whether Judge Rendlen did have involvement with the matters adverse to Mr. Briggs, such that Judge Rendlen would be barred from handling matters relating to Mr. Briggs' quest to obtain reinstatement of full privileges. Judge Rendlen has made a limited disclosure regarding his supervision of matters adverse to Critique Services. Amended Memorandum Opinion and Order dated June 11, 2014, *In re LaToya L. Steward*, Case No. 11-46399-705 (E.D. Bank.), at 43. But Judge Rendlen has not clarified his role in prior government investigations of Mr. Briggs. Judge Rendlen has a mandatory duty to disclose what extrajudicial information he gained in his capacity as United States Trustee concerning Mr. Briggs. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 861 (1988). But Judge Rendlen has never disclosed whether he obtained information in his capacity as United States Trustee that pertained to Mr. Briggs, and whether this information requires Judge Rendlen's disqualification under § 455(b)(3). The mere passage of time does not cure prior receipt of extrajudicial information. *See Wiliams v. Pennsylvania*, 579 U.S. ___, 136

31

S. Ct. 1899 (2016) (disqualification based upon involvement twenty-six years earlier). Accordingly, Judge Rendlen should be required to make an appropriate disclosure or be disqualified.

## No Other Adequate Remedy at Law

Finally, Mr. Briggs has no other adequate remedy at law. Courts have repeatedly told Mr. Briggs that the only avenue to reinstatement of his full privileges is to seek them from Judge Rendlen. *See, e.g.,* Eighth Circuit Opinion in *In re Reed*, Case No. 17-1143 (8th Cir.) dated April 25, 2018, at 15; Order in *In re Briggs*, Case No. 4:17-mc-00674 (E.D. Mo.) dated December 15, 2017, at 2; Order in *In re Briggs*, Case No. 17-00401 (E.D. Mo. Bank.) dated November 6, 2017, at 2-3.

But Judge Rendlen's actions in engaging *sua sponte* in extrajudicial investigations and in taking *ex parte* actions adverse to Mr. Briggs demonstrate that Judge Rendlen cannot and will not be fair and impartial. Mr. Briggs' only hope is that this Court will grant Mr. Briggs extraordinary relief and determine that, now having apparently lost impartiality, Judge Rendlen cannot and should not preside over any further matters

## Conclusion

WHEREFORE, Mr. Briggs seeks and requests extraordinary relief, a writ of mandamus or prohibition directing Judge Rendlen to disqualify himself and/or prohibiting Judge Rendlen from conducting further *sua sponte* investigations,

issuing notices, and handling proceedings relating to Mr. Briggs' pursuit of reinstatement of his full privileges to practice before the United States Bankruptcy Court for the Eastern District of Missouri. Alternatively, Mr. Briggs asks that this Court grant Mr. Briggs any other or further relief this Court deems just and proper.

## Request for Oral Argument

Mr. Briggs hereby requests oral argument on this Petition for Writ.

Dated this  23rd  day of August, 2018.

> Respectfully submitted,
>
> DOWNEY LAW GROUP LLC
>
> */s/ Michael P. Downey*
> Michael P. Downey
> 49 North Gore Avenue, Suite 2
> Saint Louis, Missouri 63119
> (314) 961-6644
> MDowney@DowneyLawGroup.com
>
> COUNSEL FOR PETITIONER ROSS H. BRIGGS

**Certification of Compliance**

This Petition for Writ complies with the 7,800 word limit imposed by Federal Rule of Appellate Procedure 21, in that – with the portions excluded pursuant to Rule 32(a)(7)(B)(iii) – it consists of 7,576 words, including footnotes, counted using Microsoft Word version 16.16.

This Brief also complies with Rule 32(a)(5) and (6) because it was prepared using proportional spaced Times New Roman font, 14 point.

*/s/ Michael P. Downey*

**Certification of Service**

Pursuant to Federal Rule of Appellate Procedure 21(a)(1), on this the _23rd_ day of August, 2018, a copy of this document is being served via hand-delivery on the trial-court judge:

> The Hon. Charles E. Rendlen, III
> United States Bankruptcy Judge for the Eastern District of Missouri
> Thomas F. Eagleton U.S. Courthouse
> 111 South 10th Street, 4th Floor
> St. Louis, MO 63102

*/s/ Michael P. Downey*